In the Matter of the Accounting of CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Executor of ALFRED D. RUNYON, Deceased.

Surrogate's Court, New York County, May 3, 1951.

*Becker, Berman & Odell* for executor, petitioner.

*Charles L. Sylvester* for B. William Heidkamp, as ancillary committee for Mary R. McCann, respondent.

*Spence, Hotchkiss, Parker & Duryee* for Patrice A. Coffin, respondent.

*Frank M. Foley,* special guardian for D'Ann Runyon, an infant, respondent.

*Corbin, Bennett & Delehanty* for Alfred D. Runyon, Jr., respondent.

*William A. Roe* for Travelers Insurance Company, respondent.

COLLINS, S. The testator executed his will on August 20, 1946. He died on December 20th of the same year. During this period the testator's family consisted of an adult son who was gainfully employed and an adult married daughter who was ill and confined to a sanitarium. The testator's second wife, Patrice Amati (now Patrice Amati Coffin), divorced him in Florida in June, 1946. In the executor's accounting the preliminary question presented to the court is whether a gift of an interest in

testator's literary properties to his former wife was intended to be in satisfaction of or in addition to payments to be made to her under a separation agreement.

Insofar as material, the fourth paragraph of the will reads:

" I give and bequeath to The Chase National Bank of the City of New York, in trust, any and all interest of which I may die possessed in literary property of any kind, nature and description, written, composed or produced by me, including, without limitation, all copyrights, all published or unpublished books, manuscripts, novels, stories, articles, verses, plays, and interests in motion pictures and photoplays, for the uses and purposes hereinafter set forth:

" (A) To receive the revenues and other income of whatsoever nature which may accrue from the same, and to rent, lease upon royalty, sell or otherwise dispose of the same, and out of the net income thereof pay to my former wife, Patrice Amati Runyon, during her lifetime, fifty (50%) per cent thereof, out of which she shall pay such sums as are necessary for the care and support of my beloved daughter, Mary Runyon McCann.

" (B) All the rest, residue and remainder of the net income of said property shall be paid to my daughter, Mary Runyon McCann, during her lifetime, in monthly installments not to exceed Two Hundred ($200) Dollars, beginning three (3) years after my death."

The fourth paragraph further provides that upon the death of the wife her share of the trust shall pass to the daughter. Other provisions disposing of income and principal are not relevant here. The fifth paragraph of the will set up in a trust all other personal property of the testator. This trust was for the primary use of the daughter. The former wife has no interest in that trust.

The will itself is plain. It bequeaths not a portion of the literary properties, not a remainder of the literary properties, but any and *all* interest in such properties which testator possessed at his death. Half the net income is payable to the former wife. All the remaining net income, that is, the other 50%, is for the use of the daughter. On the face of the will, therefore, neither the subject matter of the legacy nor the shares of the beneficiaries is subject to dispute. The dispute which has arisen between the former wife on the one hand, and the executors and descendants of the testator on the other, arises from the text of a separation agreement executed between the parties on June 4, 1946, and incorporated in the divorce decree.

The separation agreement provides for a division of property between the spouses and the protection of the interests of the wife under an insurance policy. The seventh paragraph reads: "Effective immediately after the death of the Husband, the Husband hereby assigns to the Wife the absolute right to receive fifty (50%) percentum of all of the royalties, commissions, revenues and other income of whatsoever nature that may accrue from or by reason of any and all books, stories, cinema plays or literary productions, of every kind and nature, that were written, composed or produced by the Husband during that period of time beginning January 1, 1930, and ending December 31, 1946, during the life of the Wife, and upon her death, all of the said royalties, commissions, revenues and other income not then collected, together with the right to collect and receive the same, shall revert to and become a part of the Husband's estate. And the Wife agrees to use such part of the funds received by her from the sources provided in this paragraph as may become necessary for the care and benefit of Mary Runyon McCann, the Husband's daughter by a former marriage."

It is to be noted that while the will deals with all of the literary property, the separation agreement relates only to that written during a specified period. The testator died during that period and so there can be no question of later articles. It appears from the testimony that nothing of substantial value was written before that period. Hence though the text differs, the actual subject matter is substantially the same in both the will and the agreement.

Note must also be made of the fact that what the agreement purports to assign, effective after testator's death, is the right "to receive" 50% of the revenues. It does not give her any right to manage, sell, lease upon royalty or otherwise administer the properties themselves or to interfere with them. The agreement gives her merely a right to receive revenues, a right that presupposes an overall management by someone else. It is significant, too, that the separation agreement covered not only writings theretofore composed (that is, up to June 4, 1946) but also covered revenues from anything written up to December 31, 1946.

The wife contends that the separation agreement assigned to her 50% of the revenues from the literary property and that the will gives her one half of the remaining 50% so that she now becomes entitled under both instruments to 75% of the revenues.

She relies on the rule that a legacy to a creditor is not to be deemed in satisfaction of the debt unless the testator so intended. (*Matter of Herb,* 163 Misc. 441, 448, and cases cited.) She contends that there is nothing in the will to show that the testator did intend the legacy to be in satisfaction of the debt but that on the contrary, the will indicates an intent to give her more than she was entitled under the agreement. The third paragraph of the will, which is cited as some evidence of this intent, reads: " While I have already made adequate provision for my former wife, Patrice Amati Runyon, nevertheless, if she survives me, I devise to her absolutely any interest of which I may be possessed at death, in any home, and bequeath to her any household effects therein."

The question before the court is different from the ordinary question whether a legacy is to be in satisfaction of a debt. A testamentary gift of a sum of money, whether payable in a lump sum or in installments, implies a bounty rather than a payment, and there is no necessary connection between the subject matter of the gift and that of the debt. Here, however, the testator did not give a general legacy to the wife, and the will and the agreement operate on the identical subject matter — the revenues of all literary properties of any real value. The question here is more concerned with the subject matter of the legacy. Did the testator in his will intend to dispose of all his literary properties or only what remained after 50% was siphoned off under the separation agreement?

The agreement, as has been noted, deals only with the " right to receive " 50% of the *revenues*. The properties themselves were never assigned or set over. The will, on the other hand, disposes of the revenues and finally of absolute ownership of all properties. It purports to dispose of "any and all interest of which [testator] may die possessed." Unless the will dealt with the entire body of property and all of its revenues, it must follow that part of the revenues and part of the properties are not disposed of at all. The agreement says that upon the death of the wife "the right to collect and receive the same, shall revert to and become a part of the Husband's estate." The will does not advert to any properties which fall into the estate after the wife's death. It says that upon the death of the wife " her share in this Trust shall pass to my daughter * * * in Trust." Upon the death of the daughter " *this interest* in the Trust shall pass in absolute ownership to Richard Runyon McCann, the son of Mary Runyon McCann, and to my beloved son, Damon Runyon,

Jr., share and share alike." The will later makes the same disposition of the corpus of the daughter's interest in " this trust." If the wife were right then the will makes no disposition at all of 50% of the revenues or of the property from which it is derived. If, however, the will is interpreted in accordance with its plain text, it makes a complete disposition of all of the property and all of its revenues.

Moreover, the agreement, though it speaks in terms of assignment, expressly makes any assignment effective " immediately after the death" of the testator. It is not necessary here to determine whether the separation agreement gave the wife any legal or equitable right to demand a part of the revenues from those who contracted with the testator or his executors. This court is concerned only with the intent disclosed by the will. The fact that the agreement gave the right to receive revenues only after the death of the testator would indicate to a draftsman of the will the desirability, perhaps even a need, to do something further to make that right effective. The will attempts to make that right effective by the bequest of that which the testator agreed she should have. Had the agreement given her all of the revenues and had the will bequeathed all of the revenues, there could be no doubt that the latter was in satisfaction of the former. Either one would have exhausted the only fund to which it could relate. Reading them both together it is apparent that both of them operate on the same fraction of substantially the same fund.

The fact that in the second paragraph of the will, the testator went beyond what was required by the agreement is no indication of an intent to do so with respect to his other property. The gift of " any home " (which apparently is ineffective because he owned none) was prefaced by the admission that it was an act of bounty which he was not otherwise required to perform. No such concession is made with respect to the gift of the literary revenues.

The court holds that the will disposes of an entire body of property, of which the agreement dealt only with a part and that the testamentary gift was intended to satisfy testator's obligations under the agreement.

There has been introduced in evidence, over the objection of the wife, the written instructions given by the testator to the draftsman of the will, a letter written by him to his son and an earlier holographic will. The court stated that it would receive such evidence insofar as it disclosed the surrounding circumstances but not insofar as it contained direct statements of

intention. The use of extrinsic evidence in aid of a search for intent that a legacy shall be in satisfaction, or in addition to a debt is a question upon which there is great divergence of authority and little attempt to reconcile decisions. (See 4 Page on Wills, § 1576, and 2 Davids on New York Law of Wills, § 795.) The written instructions to the draftsman reveal the family relationships and testator's knowledge of their needs. The other documents are largely irrelevant to the question at issue. The court feels that the intention of the testator is plainly revealed in his will and therefore deems it unnecessary to resort to extrinsic evidence.

Other questions presented by the pleadings have not been submitted to the court at this time on the representation that some of them may be adjusted by the parties. The attorney for the executor is directed to report promptly to the court the questions remaining open for decision and the court will give further directions as to procedure thereafter.

Proceed accordingly.